## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| JIMMY E. LEONARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 05-B-0713-W |
| | ) | |
| CENTRAL PENSION FUND OF THE | ) | |
| INTERNATIONAL UNION OF | ) | |
| OPERATING ENGINEERS AND | ) | |
| PARTICIPATING EMPLOYERS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment, (doc. 14), and plaintiff's Motion for Summary Judgment, (doc. 18). Plaintiff, Jimmy E. Leonard, has sued defendant, Central Pension Fund of the International Union of Operating Engineers and Participating Employers, alleging that it denied him disability benefits under an ERISA plan and that it breached its fiduciary duty to him. (Doc. 1 ¶¶ 11, 16.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 14), is due to be granted, and plaintiff's Motion for Summary Judgment, (doc. 18), is due to be denied.

## I.  STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the

initial burden of showing no genuine issue of material fact and that it is entitled to judgment

as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its

burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that

there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S.

317, 324 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

  In deciding a motion for summary judgment, the court's function is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial."  *Id.* at 249.  Credibility determinations, the weighing of evidence, and the

drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the

non-moving party is to be believed and all justifiable inferences are to be drawn in his favor.

*See id.* at 255.  Nevertheless, the non-moving party need not be given the benefit of every

inference but only of every ***reasonable*** inference.  *See Brown v. City of Clewiston*, 848 F.2d

1534, 1540 n.12 (11th Cir. 1988).

## II. <u>STATEMENT OF FACTS</u>

Plaintiff Jimmy E. Leonard was an employee of M&D Power Construction Inc., and he had previously worked for other participating employers.  (Doc. 16, Ex. 1 at 7-8.) "Participating Employer" is defined in the Plan as "An employer who has a valid collective bargaining agreement or participating agreement requiring contributions to be paid to [the] Fund . . . ."  (Doc. 16, Ex. 4, Ex. B at D98.)[1]  As a result, he was a participant in the Plan of Benefits for the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("the Plan").  (*See id.*)  The Plan is a qualified ERISA plan.  (*See id*, Ex. 4, ex. B at D133.)  The Administrator for the Plan is defendant's Board of Trustees. (*Id.*, ex. A at D175.)

On April 24, 2001, plaintiff applied for early retirement benefits.  (*Id.*, Ex. 1, ex. 1.) On the application form, plaintiff checked the box marked "Retirement" and did not check the box marked "Disability."  (*Id.*)  The form did not contain a box for "Conditional Early Retirement."  (*Id.*)  Plaintiff testified that, at the time he applied for early retirement benefits, he was "disabled or getting disabled, and [he] couldn't work no more."  (*Id.*, Ex. 1 at 21.) Before he applied for early retirement benefits, plaintiff spoke with Wayne Jones, an Administrator III in defendant's Participant Records Department, regarding his benefits.  (*Id.* at 21-23; *id.*, Ex. 3 at 8.)[2]  Plaintiff testified that Jones told him "go by the book," and that

---

[1]References to "D98" refers to the Bates stamp number on the document.

[2]Jones testified that he did not recall speaking with plaintiff.  (Doc. 16, Ex. 3 at 11-12.)  For purposes of summary judgment, the court will assume that plaintiff spoke with

when he was awarded disability benefits from Social Security, he could apply for disability benefits under the Plan.  (*Id*. at 23-24.)

In April 2001, the Plan was amended to provide for an additional type of early retirement benefit, known as a conditional early retirement benefit.  (*Id*., Ex. 4, ex. B at D113.)  This type of early retirement benefit was added to the Plan in 1997.  (*See id*., Ex. 2, ex. 8.)  According to the Plan:

> [A] Participant shall be eligible for a CONDITIONAL EARLY RETIREMENT benefit in the event the Participant meets all of the following requirements at the time of application:
>
> > (a)   he has attained his fifty-fifth (55th) birthday anniversary, but not his sixty-fifth (65th) birthday anniversary; and
> >
> > (b)   he has at least fifteen (15) years of Vesting Service . . . ; and,
> >
> > (c)   he has a claim pending for Social Security Disability Benefits in connection with Old Age and Survivors' Insurance coverage.

(*Id*., Ex. 4, ex. A at D199.)  The purpose of the conditional early retirement benefit is to allow "an eligible participant to commence receiving an Early Retirement benefit, while pursuing a claim for Disability benefits from the Social Security Administration (SSA)."  (*Id*., Ex. 2, ex. 8.)  If a participant receives a conditional early retirement benefit and is subsequently granted an "award of total disability benefits from the SSA, the Early Retirement benefit will convert to a Disability benefit effective the first of the month following the month in which the favorable decision is made by the SSA."  (*Id*.)

───────────────

Jones and that Jones responded to plaintiff's inquiry consistent with plaintiff's testimony.

4

Plaintiff retired effective July 1, 2001, and his last day worked was June 28, 2001. (*Id.*, Ex. 1 at 9; *id.*, Ex. 4 ¶ 6 and ex. D at D39.) On July 1, 2001, plaintiff began receiving a monthly early retirement benefit in the amount of $1,059.75. (*Id.*, Ex. 1 at 11-12; *id.*, Ex. 4 ¶ 6 and ex. D at D34.)

On August 8, 2001, plaintiff filed for Social Security disability insurance benefits. (Doc. 19, Ex. A at D53.) In his application, plaintiff alleged disability beginning July 6, 2001. (*Id.*) On July 18, 2003, the Social Security Administration found that plaintiff was disabled beginning July 6, 2001. (*Id.* at D50, D58.) Thereafter, on or about September 17, 2003, plaintiff's local union wrote a letter to defendant, asking that plaintiff's early retirement benefit be converted to a disability benefit based on the decision of the Social Security Administration. (*Id.* at D76.)

In response to the union's letter, defendant wrote plaintiff and advised him that his request to convert his form of benefit was due to be denied because he had not applied for a conditional early retirement benefit and because plaintiff had not provided defendant with evidence that he had a pending claim for Social Security disability benefits when he filed his application for early retirement benefits as required by the Plan. (*Id.*, Ex. 1 at 32-34 and ex. 5.) Defendant told plaintiff:

> When you applied [for early retirement benefits] in May of 2001, no mention was made of either Disability or Conditional Early Retirement. (Conditional Early Retirement is the only benefit that allows an eligible participant to commence receiving payment while pursuing a claim for Disability from the [Social Security Administration].) Therefore, we can not [sic] change your benefit type unless you produce evidence that you had filed an Application for

5

Social Security Disability Benefits prior to having filed for your Early Retirement benefit with this office. In addition, you need to furnish us a completed . . . Statement of Total and Permanent Disability[3] . . . .

In the event you are able to furnish the requested information and that documentation establishes the fact that you would have been eligible for a [conditional early retirement benefit] at the time your application was filed, we would be willing to review this information for conversion to Disability effective the first of the month following the month in which you received your award letter from the [Social Security Administration].

(*Id.*, Ex. 4, ex. D at D61-D62 [footnote added].)

Plaintiff appealed the denial of his request to convert his early retirement benefit to a disability benefit. (*Id.* at D83-D84.) Plaintiff's appeal letter stated:

Mr. Leonard applied for retirement in May 2001, and retired on July 6, 2001. He subsequently filed for Social Security Disability Benefits on August 10, 2001 and received a favorable decision on July 18, 2003. Mr. Leonard followed the procedures in the Summary Plan Description issued in June of 1990, the only resource he was aware of at the time of his retirement, and he applied for Disability Retirement Benefits. He followed the advice of a gentleman named Wayne Jones, who . . . is a representative of the Central Pension Fund in Washington, D.C., as well as the advice of his local union representatives.

Mr. Leonard was denied disability retirement benefits on October 2, 2003, because "no mention was made of either disability or conditional early retirement" when he applied in May, 2001. It should be noted that Conditional Early Retirement Benefit is not available and is not mentioned in the June 1990 Summary Plan Description. As it turns out, the Conditional Early Retirement Benefit was added in a Summary Material Modification in 1997. However, the Summary Material Modification with the additional Conditional

---

[3]The Plan requires a participant to provide a certified statement from his treating physician that the participant has a "bodily injury, disease or mental disorder [that] is reasonably expected to be permanent and cannot be improved by any known, available medical treatment procedures." (Doc. 16, Ex. 4, ex. A at D248.)

Early Retirement Benefit was never received by Mr. Leonard, the local union office or by several other union members in this area.  . . .

It is the position of the fund counsel that the Central Pension Fund met all of the distribution requirements for the Summary Material Modification as required by Federal Law.  However, it is our position that the disclosure process failed, considering the fact that many members in this area did not receive notice of this modification to the Summary Plan Description of 1990. In addition, Wayne Jones told Mr. Leonard to "go by the book" and he had nothing to worry about with regard to his disability benefits.  Obviously, the only "book" Mr. Leonard had access to did not mention the Conditional Early Retirement Benefit.

The decision to deny Mr. Leonard disability retirement is costing him approximately $450.00 per month in retirement income.  . . .

(*Id*.)  Plaintiff did not provide defendant with a certified statement of disability from his treating physician.

On or about January 15, 2004, during plaintiff's appeal, the Plan was amended to allow the Executive Committee to hear and decide appeals; prior to this amendment, the entire Board of Trustees heard and decided appeals.  (*Id*., Ex. 2, ex. 9 at D303.)  According to the minutes of its meeting, the Board delegated to the Executive Committee its authority to decide appeals that "need to be acted upon prior to a regularly scheduled Board meeting date, so that a decision can be made within the time limits prescribed by the regulations [of the Department of Labor]."  (*Id*.)  The Executive Committee is composed of two labor Trustees and two management Trustees.  (*Id*., Ex. 2 at 15-16.)

On March 26, 2004, the Executive Committee denied plaintiff's appeal.  (*Id.*, Ex. 4,

ex. D at D68-74.)  In support of its decision, the Executive Committee cited the following

reasons for its denial of plaintiff's appeal:

> Our files reflect that prior to our receipt of his application, Mr. Leonard had never corresponded with our office.  In addition, our records reflect that the August 1996 SPD ["Summary Plan Description"] was mailed directly to Mr. Leonard at the address we had on file for him . . ., which is the same city in which he resides today, albeit on a different street.  Since we never received notice of a change of address from Mr. Leonard, we would have utilized the same . . . mailing address, when forwarding the SMM ("Summary Material Modification"] issued during May of 1997 pertaining to the adoption of the [conditional early retirement benefit].  Likewise, we would have continued to use this address when forwarding the revised SPD issued during 2001.

> As to Mr. Leonard's contentions pertaining to advice allegedly given by Wayne Jones, there is no evidence in our file that Mr. Jones either spoke or wrote to Mr. Leonard concerning his application for benefits.  In fact, <u>CBS Workflow</u> does not indicate Mr. Leonard's file was assigned to Mr. Jones at any time to handle any aspect of his application for benefits.  Mr. Jones has no recollection of speaking to Mr. Leonard, nor using the phrase "go by the book" attributed to him.

> Fund Counsel has also investigated Mr. Leonard's contentions that neither the Local Union, nor several other members of Local 312, received copies of the 1997 SMM.  Business Manager Sammy Dodson at IUOE Local 312 advised Fund Counsel that he merely advised Mr. Leonard that he too was unaware of the requirements for a [conditional early retirement benefit].  Mr. Dodson specifically denies telling Mr. Leonard that the Local Union never received the 1997 SMM or subsequently issued SPD's.  The Local Union did check their records of address changes for Mr. Leonard, which indicate three different addresses between the period of December 3, 1996 and May 3, 2000, and that Mr. Leonard was residing in Ducanville, AL during May 1997.

> Accordingly, in the view of Staff, if Mr. Leonard failed to receive the Fund's 1997 SMM, such failure is attributable to Mr. Leonard's own failure to keep the Fund Office apprised of his current mailing address.  Furthermore, at the time his application was filed Mr. Leonard not only failed to disclose any

8

potential disabling condition, but also indicated on his application that he was filing for a Retirement benefit, as opposed to checking the box marked Disability. Given his failure to give any indication that he may be suffering from a potentially disabling condition and the fact that he continued working for another two months after the application was filed, Staff had no basis to suspect that he may be eligible to apply for a [conditional early retirement benefit] and, therefore, counsel him about alternative options that may be available to him at that time. . . . .

(*Id.* at D69-D70.)

Thereafter, plaintiff filed the instant action alleging defendant had denied him benefits to which he was entitled under the Plan and that defendant had breached its fiduciary duty to him.

## III. <u>DISCUSSION</u>

### A.  DENIAL OF BENEFITS CLAIM

Plaintiff contends that he is eligible for present and future disability benefits under the plan and that defendant "wrongfully denied or refused to pay [his] claims for a Disability benefit." (Doc. 1¶¶ 11-12.) The Eleventh Circuit has established a "multi-step approach" for "reviewing virtually all ERISA-plan benefit denials." *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004). The six steps of the review are:

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" ( i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)  If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)  If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)  If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)  If there is no conflict, then end the inquiry and affirm the decision.

(6)  If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Id.* at 1138-39.

The first step in determining whether plaintiff was wrongfully denied disability benefits is to determine whether, under the terms of the Plan, he was entitled to the benefits claimed.  Under the terms of the Plan, an employee is totally and permanently disabled, and thus entitled to disability benefits, if (1) the employee has been awarded Social Security disability benefits and (2) his treating physician certifies that his disabling physical or mental impairment "is reasonably expected to be permanent and cannot be improved by any known, available medical treatment procedures."  (Doc. 16, Ex. 4, ex. A at D199.)

Because the Plan defines total and permanent disability with reference to Social Security disability, the court finds that the Plan requires that an employee meet the definition of "disability" under the Social Security Act.  Under the Act, an individual is "considered to

be disabled . . . if he is ***unable to engage in any substantial gainful activity by reason of any***

***medically determinable physical or mental impairment*** which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months."  42 U.S.C.A. § 1382c (a)(3)(A)(emphasis added).  Under the Act, a person

is not disabled if he is working.  *Id*.; 20 C.F. R. § 404.1520(a)(4)(i).[4]

   The Plan provides that certain employees may receive early retirement benefits while

pursuing claims for Social Security disability benefits.  This type of retirement benefit – the

conditional early retirement benefit – is available ***only*** to employees that qualify for early

retirement benefits and that have a claim for disability benefits pending before the Social

Security Administration, i.e., employees that are disabled, as defined by Social Security, at

the time they apply for benefits.  (Doc. 16, Ex. 4, ex. A at  D199.)  This benefit is intended

to provide income to disabled participants while they await a determination from Social

Security.  (*Id*., Ex. 2, ex. 8.)  The benefit it not available for participants that apply for and

-------------------

   [4]The regulations provide:

   The sequential evaluation process is a series of five "steps" that we follow in
   a set order.  If we can find that you are disabled or not disabled at a step, we
   make our determination or decision and we do not go on to the next step.  If
   we cannot find that you are disabled or not disabled at a step, we go on to the
   next step.  . . .

      (i) At the first step, we consider your work activity, if any.  ***If you are***
      ***doing substantial gainful activity, we will find that you are not***
      ***disabled***.

20 C.F.R. § 404.1520 (a)(4)(i)(emphasis added).

receive early retirement benefits and become disabled ***after*** the time they apply for early retirement benefits.

Plaintiff contends that it was a "***legal impossibility***" for him to file a claim with Social Security because, at the time he filed for Early Retirement Benefits, he was working.  (Doc. 22 at 9 [emphasis added].)  The court agrees that plaintiff could not have filed an application for Social Security disability benefits when he filed his application for early retirement benefits because he was working, and, therefore, not disabled, as defined by Social Security. Under the terms of the Plan, plaintiff was not entitled to conditional early retirement benefits because he was still working and continued to work for a period of time after he applied for early retirement benefits and because he did not file for Social Security disability benefits until months after he applied for early retirement benefits.

The court finds that the Plan's requirement that an application for Social Security disability benefits be pending at the time a participant seeks conditional early retirement benefit insures that one who seeks this benefit is disabled at the time of his application. Clearly, such disabled participants are those the Plan seeks to benefit.  Although plaintiff claims that he was disabled, or "getting disabled,"[5] due to several physical impairments, the fact remains undisputed that he filed his application for early retirement benefits prior to the date he stopped working and before he applied for Social Security disability benefits.

---

[5](Doc. 16, Ex. 1 at 21.)

Because plaintiff continued to work, he was not considered disabled at the time he sought early retirement benefits, and, therefore, under the clear and unambiguous terms of the Plan, he was not entitled to a conditional early retirement benefit.  And, because plaintiff was not entitled to a conditional early retirement benefit, he cannot convert his early retirement benefit to a disability benefit.

Plaintiff complains that he did not know about the conditional early retirement benefit at the time he applied for an early retirement, that Jones had told him he could convert his early retirement benefit to a disability benefit, and that his appeal was decided by the Executive Committee.  These facts, however, do not support a finding that plaintiff was entitled to have his early retirement benefit converted to a disability benefit.  The unambiguous terms of the Plan cannot be changed by Jones's statements or by the fact that plaintiff did not receive the 1997 modification, which created the conditional early retirement benefit, or the change in the manner in which claims for benefits were determined.  "When plan documents unambiguously address the substantive rights of the parties at issue, the plan language controls, absent a showing of intentional fraudulent promises by the insurer in informal communications with the insured." *Meadows By and Through Meadows v. Cagle's, Inc.* 954 F.2d 686, 691 11th Cir. 1992)(citing *Alday v. Container Corp. of America*, 906 F.2d 660, 666 & n.15 (11th Cir. 1990), *cert. denied* 498 U.S. 1026 (1991)).

Because plaintiff did not qualify for conditional early retirement benefits and because the Plan does not otherwise provide for conversion of early retirement benefits to disability benefits, plaintiff's claim for unpaid disability benefits is due to be denied.

## B. BREACH OF FIDUCIARY DUTIES

In his Complaint, plaintiff alleges that defendant breached it fiduciary duty to him in a number of ways, including:

1. By failing to properly notify [plaintiff] of a modification to the plan;

2. By failing to present [plaintiff's] appeal to the Board of Trustees as required by the provisions of the plan;

3. By modifying the plan during the [plaintiff's] appeal in such a way as to avoid providing benefits to [plaintiff] which were due him.

(Doc. 1 at 4.)  In his brief in support of his Motion for Summary Judgment, plaintiff alleges that defendant breached its fiduciary duties to him in the following ways: (1) "demanded [that plaintiff] do something that is impossible under the law," namely file a claim for Social Security disability benefits before he applied for early retirement benefits and while he was still working, (2) Jones told him to "go by the book" and that his early retirement benefits would be converted to disability benefits upon a finding by Social Security that he was disabled, (3) the conditional early retirement benefit option was not made clear to plaintiff, and (4) he was not allowed an opportunity to appear before the Executive Committee that denied his appeal.  (Doc. 19 at 10-16.)  As relief for these alleged breaches of fiduciary duties, plaintiff seeks "the sum of all the claims for past benefits wrongfully withheld from

14

Plaintiff by Defendant; and for a judgment against Defendant ordering Defendant to pay all similar claims of the [plaintiff] in the future."  (Doc. 1 at 4.)

Defendant contends that plaintiff cannot maintain a claim based on an alleged breach of fiduciary duty in violation of Section 502(a)(3), 29 U.S.C. § 1132(a)(3), because he can maintain a claim for alleged unpaid benefits pursuant to Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).  (Doc. 15 at 17-21.)  The Eleventh Circuit has held "that an ERISA plaintiff who has an adequate remedy under Section 502(a)(1)(B) cannot alternatively plead and proceed under Section 502(a)(3)."  *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003)(citing *Katz v. Comprehensive Plan of Group Insurance*, 197 F.3d 1084, 1088-89 (11th Cir.1999); *see also great West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Larkin v. Life Ins. Co. of No. America*, CV 02-B-1733-S, 2004 WL 3583102, *8 (N.D. Ala. Mar. 29, 2004).  The court finds that plaintiff has an adequate remedy to recover disability benefits under § 1132(a)(1)(B);[6] therefore, he cannot pursue a claim under § 1132(a)(3) for unpaid benefits.  *Ogden*, 348 F.3d at 1288.

Based on the foregoing, plaintiff's breach of fiduciary duty claim will be granted, and that claim will be dismissed.

---

[6]The court notes that "adequate remedy under § 1132(a)(1)(B) . . . does not mean, nor does it guarantee, an adjudication in one's favor."  *Katz*, 197 F.3d at 1089; *see Ogden*, 348 F.3d at 1288.

## <u>CONCLUSION</u>

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Summary Judgment, (doc. 14), and denying plaintiff's Motion for Summary Judgment, (doc. 18), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 21st day of June, 2006.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE

16